UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK V. DAY, | Case No. CV 09-9408 PJW |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration, | |
| Defendant. | |

I.

INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying his application for Supplemental Security Income ("SSI") benefits.  He claims that the Administrative Law Judge ("ALJ") erred when he determined that Plaintiff could perform medium-level work, contrary to the opinions of an examining physician and two treating physicians.  (Joint Stip. at 4-12.)  For the following reasons, the Court concludes that the ALJ erred and remands the case to the Agency for further proceedings consistent with this Memorandum Opinion and Order.

II.

SUMMARY OF PROCEEDINGS

On September 24, 2007, Plaintiff applied for SSI benefits, alleging disability since October 6, 1994. (Administrative Record ("AR") 49.) After the Agency denied the application, he requested and was granted an administrative hearing. (AR 29, 36, 44.) Plaintiff appeared with a non-attorney representative at the hearing and testified. (AR 204-19.) On June 15, 2009, the ALJ issued a decision denying Plaintiff's application. (AR 18-28.) Plaintiff appealed to the Appeals Council, which denied review. (AR 5-7.) He then commenced this action.

III.

DISCUSSION

Plaintiff contends that the ALJ erred when he determined that Plaintiff had the residual functional capacity to perform medium-level work because that finding was contradicted by an examining doctor's and two treating doctors' opinions. (Joint Stip. at 11-12.) For the following reasons, the Court agrees that the ALJ erred.

The ALJ found that Plaintiff suffered from degenerative disc disease (of the cervical and lumbar spine) and that this was a severe impairment. (AR 23.) He concluded that, despite this condition, Plaintiff could perform the "full range of medium exertional level work." (AR 26.) Medium work requires the ability to lift 50 pounds occasionally and 25 pounds frequently, stand for six hours in an eight-hour day, and frequently bend and stoop. *See* 20 C.F.R. § 416.967(c); Social Security Ruling 83-10. Alternatively, the ALJ concluded that Plaintiff could perform light work. (AR 28.)

The ALJ's finding that Plaintiff had the residual functional capacity to perform a full range of medium work is inconsistent with examining doctor H. Harlan Bleecker's opinion. (AR 114-18.) Though Dr. Bleecker found it difficult to assess exactly how impaired Plaintiff was because Plaintiff refused to cooperate in the examination, Dr. Bleecker concluded that Plaintiff was limited to lifting 20 pounds occasionally and 10 pounds frequently, i.e., he had the residual functional capacity to perform only light work. (AR 117.) The ALJ acknowledged Dr. Bleecker's report but never discussed why he was implicitly rejecting it by concluding that Plaintiff could perform medium work. (AR 26.) This was error. In order to reject Dr. Bleecker's opinion, the ALJ had to set forth specific and legitimate reasons for doing so. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

This does not end the analysis, however, because the Court must also determine whether the error was harmless, i.e., whether it was inconsequential to the ALJ's ultimate finding that Plaintiff was not disabled. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding error that is "inconsequential to the ultimate nondisability determination" is harmless). For the following reasons, the Court concludes that the error was harmless in part and harmful in part.

The ALJ's silent rejection Dr. Bleecker's opinion was not harmless with regard to the finding that Plaintiff could perform medium work because, in Dr. Bleecker's opinion, Plaintiff did not have the residual capacity to perform this type of work. The ALJ reached an alternative conclusion, too, however--that Plaintiff could perform light work--essentially adopting Dr. Bleecker's opinion. (AR 28.)

3

Based on that finding, the ALJ determined that Medical-Vocational Guideline (hereinafter "Grid") Rule 202.13 applied, under which Plaintiff was not disabled. This finding was only half right. Though Grid Rule 202.13 does provide that individuals closely approaching advanced age, i.e., younger than 55 years old, who can perform a full range of light work are not disabled, Plaintiff turned 55 on August 22, 2008, ten months before the ALJ issued his decision. (AR 23, 212.) Thus, the ALJ was required to consider whether Plaintiff was disabled as someone who was younger than 55 and as someone who was older than 55. 20 C.F.R. § 416.963(b) ("We will use each of the age categories that applies to you during the period for which we must determine if you are disabled.").

After August 22, 2008, Grid Rule 202.13 no longer applied because Plaintiff was no longer "approaching advanced age," he had transitioned into "advanced age." 20 C.F.R. § 416.963(e). As a result, Grid Rule 202.04 came into play. Under Grid Rule 202.04, Plaintiff was disabled because he had no transferable skills. *See* 20 C.F.R. 416.968(d). Thus, the ALJ's error affected the ultimate disability decision and, therefore, the error was not harmless. For this reason, remand is required.

Plaintiff also argues that the ALJ erred in rejecting the opinions of treating doctors Mohsen Moghaddam and Imad Asmar. (Joint Stip. at 7-11.) For the following reasons, the Court concludes that remand is required on this issue, too.

Dr. Moghaddam treated Plaintiff from September 2004 to July 2008. (AR 128-53.) In two check-the-box residual functional capacity assessment forms he filled out in connection with Plaintiff's disability case, he concluded that Plaintiff could sit, stand, or walk

4

for less than two hours in an eight-hour workday; occasionally lift up to ten pounds; rarely bend or stoop; and that he would be absent from work for more than four days per month because of his condition. (AR 171, 172, 177, 178.) Thus, in Dr. Moghaddam's view, Plaintiff was not even capable of the demands of light work. *See* 20 C.F.R. § 416.967(b) (defining light work as requiring, among other things, the ability to occasionally lift 20 pounds and frequently lift 10 pounds). The ALJ rejected Dr. Moghaddam's opinion because:

> 1.   Dr. Moghaddam saw Plaintiff "on a no more than an intermittent basis" between September 2004 and July 2008.

> 2.   Dr. Moghaddam's report was not accompanied by objective medical studies, like MRIs and x-rays.

> 3.   Dr. Moghaddam appeared to have merely reiterated Plaintiff's subjective complaints, complaints the ALJ rejected.

> 4.   Dr. Moghaddam's residual functional capacity assessment was incompatible with the consultative medical examiners' reports and the medical record as a whole.

(AR 27.)

Not all of these justifications for discounting Dr. Moghaddam's opinion are supported by the facts and the law. First, regardless of the alleged intermittent nature of Dr. Moghaddam's treatment, he was Plaintiff's treating physician; he saw Plaintiff at least 20 times over a four-year period. *See generally Benton v. Barnhart*, 331 F.3d 1030, 1035-39 (9th Cir. 2003) (declining to hold that doctor who may have seen patient only once did not have "treating physician" status). The ALJ's suggestion that the intermittent nature of this relationship justified discounting Dr. Moghaddam's opinion is rejected, particularly in light of the fact that the ALJ relied instead on

5

consulting doctors, like Dr. William Boeck (AR 26), who saw Plaintiff only once. *See, e.g., Suseyi v. Astrue*, 2010 WL 842329, at *5 (W.D. Wash. Mar. 8, 2010) (holding that "having 'met claimant only once' is not a convincing or legitimate ground to reject a medical opinion. If it were, the opinions of most examining doctors . . . should be rejected.").

The ALJ's second reason for discounting Dr. Moghaddam's opinion was that it was not accompanied by objective medical tests. This reason is supported by the record and is a valid reason for questioning the doctor's opinion. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

The third reason the ALJ relied on for discounting Dr. Moghaddam's opinion was that it appeared to be based on Plaintiff's subjective complaints of pain and limitation, which the ALJ found unbelievable. Plaintiff has not challenged the ALJ's credibility findings. Thus, the Court finds that it is supported by the record. And this is a valid reason for discounting a doctor's opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.").

The ALJ's fourth reason for discounting Dr. Moghaddam's opinion was that it was not "compatible" with the other doctors' reports and the medical record. (AR 27.) This justification is comprised of two elements, neither of which supports rejection of the opinion. The first element is that Dr. Moghaddam's opinion was inconsistent with the other doctors' opinions. But, all things being equal, the ALJ was supposed to accept Dr. Moghaddam's opinion over the other doctors'

opinions where a conflict existed because Dr. Moghaddam was a treating doctor. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) (explaining treating doctor's opinion is entitled to the greatest weight, followed by the opinion of an examining doctor, followed by the opinion of a non-examining doctor). The second part of the ALJ's justification for rejecting Dr. Moghaddam's opinion is that it was "[in]compatible with . . . the medical record taken as a whole (Exhibits B1F through B10F)." (AR 27.) This generic, unspecified explanation for rejecting a doctor's opinion is not permitted. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (rejecting ALJ's decision to discount treating physician's opinion on ground that it was "contrary to the preponderant conclusions mandated by those objective findings"). Among other things, it prevents the parties and the Court from being able to discern the ALJ's reasons for reaching his conclusion and, thereby, effectively eliminates review. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006) ("[W]e cannot affirm such a determination unless it is supported by specific findings and reasoning.").

In the end, the Court finds that two of the ALJ's reasons for rejecting Dr. Moghaddam's opinion are supported by the facts and the law and two are not. It is for the ALJ to determine in the first instance whether he believes that these two reasons are enough to reject Dr. Moghaddam's opinion. On remand, he should reconsider the issue, taking into account any evidence he deems relevant to the inquiry, and set forth in his decision the specific reasons he accepts or rejects Dr. Moghaddam's opinion.

Moving to Dr. Imad Asmar--who also concluded that Plaintiff did not have the residual functional capacity to perform light work (AR

181-85)--the ALJ rejected his opinion for five reasons: (1) Dr. Asmar
had only seen Plaintiff four times over a seven-month period; (2) Dr.
Asmar's residual functional capacity assessment was prepared 13 months
after Dr. Asmar last saw Plaintiff; (3) there was no objective medical
evidence supporting Dr. Asmar's opinion; (4) Dr. Asmar appeared to
merely accept Plaintiff's subjective complaints, complaints the ALJ
found incredible; and (5) Dr. Asmar's findings were incompatible with
the findings of the other doctors and the medical record.  (AR 26-27.)

The ALJ erred when he found that Dr. Asmar had only seen
Plaintiff four times.  In fact, Dr. Asmar had seen him six times.  (AR
97-102.)  The issue really is not whether it was four or six, however,
the issue is whether the limited number of visits undermined Dr.
Asmar's status as a treating physician.  As explained above in the
Court's analysis of the ALJ's treatment of Dr. Moghaddam's opinion on
this very same basis, whether it was four or six times it was enough
to constitute a treating relationship and the ALJ should not have
discounted Dr. Asram's opinion because he had seen Plaintiff only a
limited number of times.  This is particularly true here, where,
instead of relying on Dr. Asmar who had seen Plaintiff six times, he
relied instead on a consulting doctor who had seen Plaintiff only
once.

The ALJ also erred in his finding that Dr. Asmar's May 2008
residual functional capacity assessment was prepared 13 months after
he had last seen Plaintiff.  In fact, according to Dr. Asmar, he had
seen Plaintiff one month before he completed the questionnaire.  (AR
181.)  But, here again, the issue is not whether Dr. Asmar saw
Plaintiff one month or 13 months before he prepared the assessment.
Assuming it had been 13 months, that was not a legitimate reason for

discounting Dr. Asmar's opinion. *See, e.g., Feskens v. Astrue*, 2011 WL 1344060, at *10 (D. Or. Apr. 8, 2011) (holding ALJ could not discredit treating doctor's assessment solely on ground his opinion was formed three years after he last treated claimant).

As to the ALJ's finding that Dr. Asmar's opinion was not supported by objective medical evidence, i.e., MRIs and x-rays, the record is mixed. In 2006, Plaintiff underwent CT scans at Dr. Asmar's direction. (AR 109-12.) These scans revealed that Plaintiff had degenerative changes in his spine. (AR 109-12.) Though it is true that Plaintiff did not have an MRI, he tried to get one, but his insurance company denied his request. (AR 103.) Thus, the Court does not find the lack of objective medical evidence a compelling reason to reject Dr. Asmar's opinion.

The fourth reason relied on by the ALJ to reject Dr. Asmar's opinion was that it appeared that he merely adopted Plaintiff's exaggerated claims of disability. This is a valid reason to reject a doctor's opinion and it is supported by the record.

The final reason the ALJ rejected Dr. Asmar's opinion was that it was not compatible with the other doctors' views and the medical record taken as a whole. As discussed above, this is not a valid reason for discounting a treating doctor's opinion because the treating doctor's opinion is entitled to greater weight than the non-treating doctors' opinions. Similarly, the general, catchall "the doctor's opinion is not compatible with the medical record as a whole" is not a specific enough reason to reject a doctor's opinion.

Having found error in four of the five reasons cited by the ALJ for rejecting Dr. Asmar's opinion, the Court finds that this issue, too, should be remanded for further consideration. On remand, the ALJ

is free to develop the record as he sees fit, including holding a hearing and obtaining further medical evidence.

IV.

CONCLUSION

For these reasons, the Agency's decision is REVERSED and the case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.

DATED: May _____9_____, 2011

_Patrick J. Walsh_
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE